UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| YULY ANDREA GONZALEZ GUTIERREZ, <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, et al., <br><br> Respondents. | No. 1:26-CV-020-H |

### ORDER

Before the Court is Yuly Andrea Gonzalez Gutierrez's emergency motion for a temporary restraining order. Dkt. No. 2. Gonzalez Gutierrez contends that her detention without bond, under recent Board of Immigration Appeals precedent, violates the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act. *Id.* at 6. But this argument flatly contradicts longstanding principles of constitutional law, the statute's plain language, and the history of legislative changes enacted by Congress. Thus, Gonzalez Gutierrez fails to meet the high bar for emergency relief, and the Court denies the motion.

**1.   Background**

Gonzalez Gutierrez is a citizen of Colombia who was released into the United States on humanitarian parole in 2022. Dkt. No. 1 ¶¶ 1, 6. Three years later, officials took Gonzalez Gutierrez into custody during a scheduled check-in with U.S. Immigration and Customs Enforcement. *Id.* ¶ 2. She has not received a bond hearing because of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that "applicants for admission" must be detained without bond under Section

1225(b)(2)(A) of the INA.  *See id.* ¶ 3.  Gonzalez Gutierrez is currently detained at the Bluebonnet Detention Center in Anson, Texas.  *Id.* ¶ 1.

Months after her detention began, Gonzalez Gutierrez filed a petition for a writ of habeas corpus requiring the respondents to either release her immediately or provide a bond hearing.  *Id.* at 23 ¶ 5.  She also filed an emergency motion for TRO directing the respondents "to provide her with a constitutionally adequate bond hearing" within three days of the Court's order.  Dkt. No. 2 at 16.  The Court issued an order requiring the respondents to show cause why Gonzalez Gutierrez's petition and motion should not be granted.  Dkt. No. 5.  The Court gave the respondents 20 days to file their answer.  *Id.* at 1.

2.    **Legal Standard**

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders and injunctions.  A temporary restraining order, or TRO, is "simply a highly accelerated and temporary form of preliminary injunctive relief."  *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009).  Thus, the party seeking a TRO or preliminary injunction must satisfy the same four-factor standard for preliminary injunctive relief.  *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021).  The party seeking relief must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) issuing the injunction will not disserve the public interest.[1]  *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

---

[1] Gonzalez Gutierrez suggests that the Ninth Circuit's "sliding scale" approach to preliminary injunctive relief applies here.  *See* Dkt. No. 2 at 9 (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).  But she is reminded that the Northern District of Texas is in the Fifth Circuit, not the Ninth.

A TRO, like any injunction, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To prevail, the movant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

**3.    Analysis**

Gonzalez Gutierrez fails to demonstrate a substantial likelihood of success on the merits, which is fatal to her motion for TRO. The Court recognizes that Gonzalez Gutierrez's habeas petition raises additional arguments that were not included in her emergency motion for TRO. Given the need to resolve the motion on an accelerated timeline, the Court will address all other arguments when resolving Gonzalez Gutierrez's habeas petition (Dkt. No. 1), which remains pending.

**A.    Gonzalez Gutierrez is unlikely to show that her detention without bond violates the Fifth Amendment's Due Process Clause.**

Gonzalez Gutierrez maintains that her detention without bond contravenes her due process rights under the Fifth Amendment. Dkt. No. 2 at 11–12. Her argument, however, suffers from several flaws. First, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court upheld the constitutionality of Section 1226(c) of the INA, which requires that certain aliens be detained during removal proceedings without bond. 538 U.S.

510, 522 (2003). The Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. To the contrary, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. Accordingly, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

Gonzalez Gutierrez ignores these background principles. Instead, she relies solely on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 2 at 12. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Gonzalez Gutierrez provides no reason why the Court should apply *Mathews* here.

That said, Gonzalez Gutierrez's detention is likely constitutional even under *Mathews*. Applying that test, courts consider: (1) the individual's private interest; (2) the risk of erroneous deprivation of the right absent further procedures; and (3) the government's interest. 424 U.S. at 335. "Ultimately, *Mathews* remains a flexible test that can and must

account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Beginning with the first factor, Gonzalez Gutierrez surely has a significant interest in "freedom from physical confinement." Dkt. No. 2 at 12. But the Supreme Court's "longstanding view [is] that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526. Indeed, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process" for more than a century. *Id.* at 523 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

Next, Gonzalez Gutierrez contends that the second factor cuts in her favor because the lack of a bond hearing absolves the government from having to justify its interest in detaining her (e.g., to assure her appearance at future hearings and to promote public safety). Dkt. No. 2 at 12. But even if Gonzalez Gutierrez is right about factor two, the risk of erroneous deprivation is outweighed by the government's "sovereign prerogative[s]" in matters of immigration. *Landon*, 459 U.S. at 34; *see Dep't of State v. Muñoz*, 602 U.S. 899, 912 (2024) (noting the government's "sovereign authority to set the terms governing the admission and exclusion of noncitizens"). Thus, even if *Mathews* applies, Gonzalez Gutierrez has not shown a substantial likelihood of success on her due process claim.[2]

---

[2] In any event, as an "applicant for admission," Gonzalez Gutierrez has "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Gonzalez Gutierrez is not entitled to a bond hearing as a matter of procedural due process.

### B. The text of the INA weighs heavily against Gonzalez Gutierrez's position regarding the availability of bond.

Gonzalez Gutierrez also argues that her detention without bond violates the INA. Dkt. No. 2 at 9–11. As she puts it, her detention is "subject to the discretionary framework of 8 U.S.C. § 1226(a)," which permits bond hearings for certain aliens.[3] *Id.* at 10. She says that the respondents, on the other hand, justify her mandatory detention under Section 1225(b). *Id.* Whether the INA's mandatory-detention or discretionary-detention provision applies here is a question of statutory interpretation. When the Court interprets statutes, "[t]he statutory text is invariably the first and primary consideration." *Barr v. SEC*, 114 F.4th 441, 448 (5th Cir. 2024). And if the text is "clear and unambiguous, the interpretive inquiry ends." *Id.*

The Court is unpersuaded that the INA's mandatory-detention provision applies only to aliens encountered "at or near the border." Dkt. No. 2 at 7. The provision applies to "applicant[s] for admission," not merely arriving aliens. 8 U.S.C. § 1225(b)(2)(A). To be sure, an arriving alien is an applicant for admission: Subsection 1225(a)(1) defines applicant for admission, in part, as "[a]n alien . . . who arrives in the United States." But the same provision also defines an applicant for admission as "[a]n alien present in the United States who has not been admitted." *Id.* "When a statute includes an explicit definition, [the Court] must follow that definition . . . ." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

---

[3] Although Section 1226(c) also mandates detention for certain classes of aliens, this Order refers to Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for the sake of simplicity.

Gonzalez Gutierrez remains an "applicant for admission" even though she was paroled into the United States and has lived here since. *See* Dkt. No. 1 ¶¶ 10–11. Although "applicants for admission may be temporarily released on parole," that status "'shall not be regarded as an admission of the alien.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). "Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which [she] was paroled and thereafter [her] case shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States.'" *Id.* (emphasis added) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see* 8 U.S.C. § 1101(a)(13)(B) (noting that "[a]n alien who is paroled . . . shall not be considered to have been admitted"). Thus, "parolees are not 'admitted aliens' but 'applicants for admission.'" *Akhtar v. Gonzales*, 450 F.3d 587, 594 n.31 (5th Cir. 2006) (citation omitted).

On this understanding, Gonzalez Gutierrez is an "applicant for admission" despite having been lawfully paroled into the United States. Thus, given that Gonzalez Gutierrez is "[a]n alien present in the United States who has not been admitted," the plain language of the mandatory-detention provision weighs heavily against her assertion that she is subject only to discretionary detention under Section 1226. *See* 8 U.S.C. § 1225(a)(1); *see also, e.g.*, *Zuniga v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-221, 2025 WL 3755126, at *3–5 (N.D. Tex. Dec. 29, 2025) (denying a habeas petition raising the same arguments as Gonzalez Gutierrez); *Garibay-Robledo v. Noem*, __ F. Supp. 3d __, No. 1:25-CV-177, 2025 WL 3264482, at *3–4 (N.D. Tex. Sept. 15 2025) (denying reconsideration of a TRO because the petitioner was an applicant for admission under the mandatory-detention provision).

The Executive Office of Immigration Review's regulations, which were drafted following the Illegal Immigration Reform and Immigrant Responsibility Act of 1996's (IIRIRA) enactment, confirm this understanding of the term "applicant for admission." An interim rule provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). "The effect of this change," the rule goes on to explain, "is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing statutory authority to deny bond to all non-admitted aliens, the government previously declined to exercise the full extent of its authority under the INA.

Then, in July 2025, the U.S. Department of Homeland Security distributed an internal policy (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, __ F. Supp. 3d __, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity). The policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No.

25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[4]  Thus, DHS maintained the position—which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who are present without admission are ineligible for bond.  The BIA acknowledged that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," but it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice.  *Id.* at 225 n.6.  When the current Trump Administration took office, it was free to reconsider the government's position and to exercise the statutory right to deny bond hearings for "applicants for admission."

### C. The statutory history of the INA supports the Court's interpretation of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for statutory interpretation.  *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)).  Here, the statutory history of the INA confirms what the plain text already makes clear: aliens who entered the United States without admission and are later apprehended in the interior are "applicant[s] for admission" who must be detained pending removal under Section 1225(b)(2)(A).

In IIRIRA, Congress added the broad definition of "applicant for admission" to the INA.  "Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'"  *Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) (quoting 8 U.S.C. § 1101(a)(13) (1994)).  Under this so-called entry doctrine, aliens who snuck into the United

---

[4] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

States without inspection were entitled to the procedural and substantive protections afforded in deportation proceedings. *Id.* Yet aliens who presented themselves to immigration officials for inspection—say, at a port of entry—were subject to "more summary exclusion proceedings." *Id.* (quotation omitted). This distinction—where aliens who followed the rules and presented for inspection were worse off than those who broke the law—created "a perverse incentive to enter at an unlawful rather than a lawful location." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

IIRIRA did away with this anomaly. Congress replaced the entry doctrine with a criterion based on admission, which it defined as "*lawful* entry . . . after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Congress also added Section 1225(a)(1)—the definition of "applicant for admission"—and mandated detention for all such applicants while their removal proceedings play out. *See* 8 U.S.C. § 1225(b)(2)(A). By defining "applicant for admission" to include all aliens who have not been admitted, Congress thus eliminated the previous incentives to enter the country illegally.[5]

### 4. Conclusion

Because Gonzalez Gutierrez fails to show a substantial likelihood of success on the merits, the Court denies her emergency motion for TRO (Dkt. No. 2). The habeas petition (Dkt. No. 1) remains pending.

---

[5] To be sure, Gonzalez Gutierrez did not enter the United States illegally. *See* Dkt. No. 1 ¶¶ 10–11. But the statutory history provides more context for why it is wrong to say that mandatory detention under Section 1225(b)(2)(A) applies only to aliens encountered "at or near the border." Dkt. No. 2 at 7.

So ordered on January 13, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE